IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-201-FL

| | | |
|---|---|---|
| *In re*: | ) | |
| | ) | |
| JBM FARMS, INC., | ) | |
| | ) | |
| Debtor, | ) | |
| ——————————————— | ) | |
| | ) | |
| JBM FARMS, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| YADKIN BANK, | ) | |
| | ) | |
| Appellee. | ) | |

This matter is before the court on appeal by JBM Farms, Inc. ("debtor") from order issued by the United States Bankruptcy Court for the Eastern District of North Carolina regarding disbursement of proceeds from sale of a certain tractor ("tractor proceeds"). (DE 1-1). Debtor filed a brief in support of its appeal challenging the order that it distribute the tractor proceeds to Yadkin Bank ("creditor") (DE 20), and creditor filed a brief in response. (DE 24). In this posture, the issues raised are ripe for ruling. For the reasons stated more specifically below, the court affirms the bankruptcy court's order regarding disbursement of the tractor proceeds.

## BACKGROUND

Debtor is a farming operation located in Beaufort County, North Carolina. Billy Joe Bell is debtor's secretary and treasurer, as well as one of its unsecured creditors. In his individual

capacity, Bell purchased a 1999 JD 7410 tractor, serial number RW7410R021677 ("tractor"), in 2003, and he retained sole ownership of the tractor until its sale at auction in 2015.

In 2010, debtor entered into a loan agreement with creditor's predecessor in interest, East Carolina Bank.   An agricultural security agreement ("2010 Security Agreement") accompanying the loan listed, among other things, all of debtor's farming equipment as security for the loan.  A schedule attached to the 2010 Security Agreement ("Schedule A") enumerated the pieces of farming equipment offered as collateral, including the tractor.  The 2010 Security Agreement stated, "Debtor has or will acquire free and clear title to all of the Collateral" listed in the schedule of equipment.  (DE 11-2, 13).  Bell signed Schedule A and the 2010 Security Agreement in his capacities as debtor's secretary and treasurer.

In 2013, debtor entered into a credit contract with another one of creditor's predecessors in interest, VantageSouth Bank.  A security agreement ("2013 Security Agreement") accompanying the credit contract provided a security interest in "[a]ll equipment now owned or hereafter acquired by the debtor, wherever located, including, without limitation, all machinery, equipment, furnishings, trade fixtures."  (DE 11-1, 13).  The 2013 Security Agreement adopted Schedule A as a list of collateral providing security for the credit contract.  Bell signed the 2013 Security Agreement in his capacities as debtor's secretary and treasurer.

On November 19, 2014, debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Chapter 11"), and Bell was appointed debtor's authorized representative.  (DE 8-1, 3).  In its filings with the bankruptcy court, debtor indicated that it owned the tractor, and that creditor had a lien on the tractor.  (Id. at 57, 59).  On March 30, 2015, debtor filed a Plan of Reorganization ("Plan") and a disclosure statement.  (Id. at 81, 101).  The Plan

2

provided that debtor would satisfy its debts through sale of its assets. The disclosure statement listed the tractor as personal property of debtor, and specified that proceeds of its sale would be distributed to creditor pursuant to creditor's lien. (Id. at 124). Following resolution of an objection to the Plan by creditor, creditor voted in favor of the bankruptcy court confirming the Plan; Bell signed both the Plan and the disclosure statement in his capacities as debtor's secretary and treasurer.

On June 8, 2015, the bankruptcy court entered an order confirming the Plan and the disclosure statement, and incorporated the provisions of both documents in the order ("Confirmation Order"). (DE 10-1, 89, 93). As incorporated by the Confirmation Order, the Plan provides, "The Debtor proposes to pay [creditor's] claim from the net proceeds of the liquidation of the Debtor's assets as outlined in the Liquidation section below . . . . [which] proposes the liquidation via public auction of all the personal property listed on Exhibit C of the Disclosure Statement." (Id. at 100–01). Exhibit C of the disclosure statement describes creditor as "lienholder" of the tractor. (DE 8-1, 124).

On June 19, 2015, debtor sold the tractor during a public auction of its farming equipment. After the auction, in an attempt to provide clear title to the purchaser, debtor retrieved from its files a copy of the tractor's bill of sale, which debtor alleges caused it to discover that Bell, not debtor, owned the tractor. Thereafter, debtor filed a motion before the bankruptcy court to approve distribution of the auction proceeds, and to request a hearing to determine whether creditor was entitled to the tractor proceeds in light of debtor's discovery regarding the tractor's ownership.[1] (Id.

---

[1] Bell, in his individual capacity, has not challenged ownership of the tractor in bankruptcy court or in any other forum. In its motion to approve distribution of sale proceeds, debtor suggests, "that should the Court determine the lien in favor of [creditor] is not valid, Mr. Billy Bell will contribute the sale proceeds to the bankruptcy estate to pay administrative and unsecured claims." (DE 8-1, 128 ¶ 8).

3

at 127).    Creditor filed a response in opposition to debtor's motion (DE 8-1, 138), and the bankruptcy court conducted two hearings on the issue.

At the hearings, the bankruptcy court received into evidence Bell's testimony on behalf of debtor.  Bell stated that a representative of East Carolina Bank had prepared the list of equipment included in Schedule A of the 2010 Security Agreement and 2013 Security Agreement, and that he had signed Schedule A without verifying the accuracy of the information it contained regarding ownership of the tractor.    (DE 12-3, 22:16–23:11).    At one hearing, the bankruptcy court acknowledged that the issue "would be completely different had there not been a plan and disclosure statement," but it found that there existed "a pattern of consistent behavior by the debtor treating this [tractor] as part of its own property, which is further . . . memorialized in the schedules filed with the Court."  (Id. at 49:2–20).

Accordingly, on December 3, 2015, the bankruptcy court held that, given the effect of its previous Confirmation Order incorporating all provisions of the Plan, and in light of debtor's failure to raise the issue of the tractor's ownership prior to confirmation, the principle of res judicata barred debtor from claiming that creditor is not entitled to the tractor proceeds.  ("Distribution Order," DE 1-1).  The bankruptcy court reasoned that, "[i]t is irrelevant that the Debtor and Bell did not realize that the Tractor belonged to Bell until after confirmation of the Plan, because actual knowledge of a potential claim is not a requirement for application of res judicata principles."  (Id. at 4 ¶ 15).  As a result, the bankruptcy court directed debtor to disburse the tractor proceeds to creditor in accordance with the distribution described in the confirmed Plan.

This appeal of the Distribution Order followed.  The parties' primary dispute regards the preclusive effect of the bankruptcy court's Confirmation Order, specifically whether the order

4

precludes debtor's post-confirmation claim that creditor is not entitled to the tractor proceeds. In addition, the parties dispute whether equitable estoppel and waiver bar debtor's claim, and whether the parties' agreements prior to the bankruptcy proceedings created a valid lien on the tractor.

## COURT'S DISCUSSION

A.      Standard of Review

This court reviews the bankruptcy court's legal determinations de novo. Ford Motor Credit Co. v. Reynolds & Reynolds Co., 26 F.3d 481, 483 (4th Cir. 1994). The court reviews the bankruptcy court's findings of fact for clear error. See United States v. Cone, 714 F.3d 197, 219 (4th Cir. 2013). A reviewing court will not reverse a ruling committed to the bankruptcy court's discretion unless it was "guided by erroneous legal principles," Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999), "rests upon a clearly erroneous factual finding," id., or otherwise is "arbitrary and irrational." Cone, 714 F.3d at 219.

B.      Analysis

Debtor argues three theories in support of its position that creditor is not entitled to the tractor proceeds: first, that creditor does not have a valid lien over the tractor; second, that the bankruptcy court lacked authority to give creditor security that, under North Carolina law, was not property of debtor; and third, that the Confirmation Order does not preclude post-confirmation claims relating to ownership of the tractor. Creditor responds that it does have a valid lien on the tractor, that res judicata bars debtor's post-confirmation claim, that debtor is equitably estopped from contesting creditor's lien, and that debtor waived its right to object to creditor's lien. For the following reasons, the court agrees that the doctrines of res judicata, equitable estoppel, and waiver, bar debtor's claim.

1.      Res Judicata

a.      Preclusive Effect of Confirmation Plan

Under Chapter 11 of the United States Bankruptcy Code, "the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor . . . whether the claim or interest of such creditor . . . is impaired under the plan."  11 U.S.C. § 1141(a).  To determine whether an earlier federal judgment, including the judgment of a bankruptcy court, bars a claim asserted in a later action on the basis of res judicata, the court considers whether:

> 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and 3) the claim in the second matter is based upon the same cause of action involved in the earlier proceeding.

Grausz v. Englander, 321 F.3d 467, 472 (4th Cir. 2003).

Generally, "claims are part of the same cause of action when they arise out of the same transaction or series of transactions, or the same core of operative facts."  Id. at 473.  Res judicata bars available claims "regardless of whether they were asserted or determined in the prior proceeding."  Brown v. Felsen, 442 U.S. 127, 131 (1979); see also In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996) ["Varat"] ("[P]arties may be precluded from raising claims or issues that they could have or should have raised before confirmation of a bankruptcy plan.").  This includes "all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted."  Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991).  Furthermore, "[f]or purposes of [res judicata], it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls."  Varat, 81 F.3d at 1316.

6

The Fourth Circuit has determined that, "to extinguish or modify a lien, the debtor must take some affirmative step toward that end" during the pre-confirmation process. In re Deutchman, 192 F.3d 457, 460 (4th Cir. 1999). Accordingly, a party's failure to raise claims related to liens involved in a bankruptcy plan's confirmation may bar that party from asserting those claims in a subsequent action arising from the same transaction. See Spartan Mills v. Bank of America Ill., 112 F.3d 1251 (4th Cir. 1997); County Fuel Co., Inc. v. Equitable Bank Corp., 832 F.2d 290, 293 (4th Cir. 1987).

For example, in Spartan Mills, the bankruptcy court issued an order confirming a Chapter 11 bankruptcy plan providing a creditor, Bank of America Illinois, with a lien over proceeds from a debtor's sale of certain equipment. 112 F.3d at 1255. Another creditor, Spartan Mills, was a party to the bankruptcy proceedings, received notice of the court's order, and did not object to the plan prior to its confirmation. Id. at 1256. Some time later, Spartan Mills filed suit in district court seeking declaratory judgment that its lien was superior to Bank of America Illinois's lien, and arguing that it was entitled to proceeds from sale of the equipment. Id. at 1254. The Fourth Circuit Court of Appeals found that, although the bankruptcy court did not follow certain bankruptcy procedures for voiding Spartan Mills's lien, "[t]he lien of a creditor is void if the unappealed, final order of a bankruptcy court vested with proper jurisdiction so declares." Id. at 1257. Other courts within the Fourth Circuit have reached similar conclusions. See Sampson v. Chase Home Fin., 667 F. Supp. 2d 692, 693, 696–97 (S.D. W. Va. 2009) (finding res judicata state law claims brought by plaintiffs who failed to object to proof of claims filed in bankruptcy court prior to confirmation); In re Snow, 270 B.R. 38, 42 (D. Md. 2001) (finding res judicata a debtor's challenge of an inspection fee that formed part of a creditor's proof of claim where debtor failed to object to the fee prior to confirmation).

7

Here, the bankruptcy court issued an order confirming the Plan and incorporating its terms, pursuant to 11 U.S.C. § 1327. (DE 10-1). The Plan represented that debtor owned the tractor, that creditor held a lien on the tractor, and that the tractor proceeds would be paid to creditor. Accordingly, two prongs of res judicata clearly are established: the Confirmation Order issued from a court of competent jurisdiction, and both debtor and creditor are parties to the Confirmation Order and the instant action. See Grausz, 321 F.3d at 472.

The only prong of res judicata in dispute is whether the issues raised in debtor's motion are the same as those that could have been raised at or prior to the Plan's confirmation. Debtor argues that res judicata does not apply because the Confirmation Order pertained only to "how much the Appellee was owed," whereas debtor's instant motion relates to "[t]he issue of whether the Tractor was collateral of Appellee." (DE 20, 21). However, debtor mischaracterizes the Confirmation Order, which pertains to "each and every provision contained . . . [in the] final version of the Confirmed Plan, [and] which incorporates all modifications and oral amendments made at the hearing on confirmation of the Plan." (DE 10-1, 2 ¶ 2). Where the Plan's terms include provisions describing the ownership, sale, and distribution of proceeds of the tractor (see DE 8-1, 57, 59, 124) (listing the tractor as debtor's "personal property," and labeling creditor as "lienholder"), and where the Confirmation Order incorporates those provisions, debtor's instant motion arises out of the same transaction, and the same core of operative facts, as those determined by the Confirmation Order. See Grausz, 321 F.3d at 472–73.

Alternatively, debtor argues that, in fact, it was not aware Bell owned the tractor until after the confirmation hearing, and that its claim relates to newly discovered facts that must have been addressed through an adversary proceeding prior to the confirmation hearing in order for the

8

Confirmation Order to render res judicata the instant claim.  However, debtor's ignorance of the tractor's ownership, and debtor's resulting failure to raise the issue prior to the confirmation hearing, do not negate the Confirmation Order's res judicata effect upon post-confirmation claims related to creditor's lien as it is incorporated in the Confirmed Plan.  See Varat, 81 F.3d at 1316 ("For purposes of [res judicata], it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment.").

Debtor's argument regarding the necessity for an adversary proceeding on the issue also is unavailing.  Debtor relies upon Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995), to support its argument that creditor waived the procedural requirement of an adversary proceeding regarding ownership of its lien on the tractor, and that the issue therefore could not be determined by the bankruptcy court's Confirmation Order.   However, Cen-Pen Corp. involved a Chapter 13 bankruptcy, and the court in that case relied upon 11 U.S.C. § 1327 to determine the confirmed Chapter 13 plan's res judicata effect.  See 58 F.3d at 93.  Here, debtor filed under Chapter 11, and 11 U.S.C. § 1141 governs the Confirmed Plan's res judicata effect.  Sections 1141 and 1327 treat liens differently following a plan's confirmation.  See In re Reg'l Bldg. Sys., Inc., 254 F.3d 528, 532–33 (4th Cir. 2001) ("Chapter 11, by contrast, . . . has no provision allowing a debtor to ignore secured claims. . . . Unlike Chapter 13, Chapter 11 expressly contemplates that a reorganization will result in the sale or transfer of parts of the debtor's estate.").  Therefore, the analysis and application of § 1327 in Cen-Pen Corp. does not alter application of res judicata under § 1141 here.  Moreover, even if the bankruptcy court neglected a bankruptcy procedure in addressing the tractor's lien prior to the confirmation hearing, debtor's failure to object to the Confirmation Order's provisions on that issue bars any related post-confirmation claims as res judicata.  See Spartan Mills, 112 F.3d at 1257.

9

In sum, the bankruptcy court possessed jurisdiction to issue its Confirmation Order on the merits of debtor's Plan; debtor and creditor both are parties to the Confirmation Order and the instant action; and debtor's claim in the instant action arises out of the same transaction, and the same core of operative facts, as those determined by the Confirmation Order. See Grausz, 321 F.3d at 472–73. Accordingly, in light of the Confirmation Order, debtor's claim that creditor is not entitled to the tractor proceeds assigned to it by lien under terms of the Plan must be barred as res judicata. See id.

> b.    Preservation of Post-Confirmation Claims

Debtor argues that, even if res judicata applies to its claim, the plain language of the Plan reserves debtor's right to bring post-confirmation claims. Parties may agree to modify the preclusive effect of a final order by reserving the right to adjudicate later an issue that could have been resolved. See Young-Henderson v. Spartanburg Area Mental Health Ctr., 945 F.2d 770, 774 (4th Cir. 1991). In the context of bankruptcy, courts have found that if a confirmed bankruptcy plan expressly reserves the right to litigate a specific cause of action after confirmation, then res judicata may not apply to that action. See Browning v. Levy, 283 F.3d 761, 774–75 (6th Cir. 2002); D & K Props. Crystal Lake v. Mutual Life Ins. Co. of N.Y., 112 F.3d 257, 259–60 (7th Cir. 1997); Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 586 (1st Cir. 1995); In re Kelley, 199 B.R. 698 (B.A.P. 9th Cir. 1996); In re Ginn, 465 B.R. 84, 91 (Bankr. D.S.C. Jan. 11, 2012); In re Nix, No. 10-1103-HB, 2012 WL 27667, at *5–6 (Bankr. D.S.C. Jan. 5, 2012). However, "not all reservation of rights clauses are drafted equally," In re Harling, 541 B.R. 330, 334 (Bankr. D.S.C. 2015), and "[t]he majority of courts addressing reservation of rights clauses in Chapter 11 plans have concluded that a general reservation of rights does not suffice to avoid res judicata." In re Nix, 2012

10

WL 27667, at *6 (collecting cases).  But see In re Weidel, 208 B.R. 848, 853 (Bankr. M.D.N.C. 1997) (giving effect to a plan provision containing a general reservation of rights to bring post-confirmation claims).  Courts reason that "[a] blanket reservation that seeks to reserve all causes of action reserves nothing.  To hold otherwise would eviscerate the finality of a bankruptcy plan containing such a reservation."  In re Nix, 2012 WL 27667, at *6.

In In re Nix, HFC, a creditor, moved to dismiss claims by a debtor, Audrey Nix, on the bases that all of Nix's causes of action arose from issues that could have been addressed in proceedings prior to confirmation of the bankruptcy plan, and therefore were barred by res judicata, equitable estoppel, and waiver.  2012 WL 27667, at *1, *5.  Nix argued that a reservation of rights provision in her confirmed plan protected her post-confirmation challenges.  Id. at *2, *5.  Specifically, the confirmed plan included provisions stating, "Confirmation of this plan does not bar a party in interest from objecting to a claim," and "Nothing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any causes of action owned by the debtor." Id. at *5.  The court held that these provisions "do[ ] not leave the door open to pre-confirmation causes of action against this creditor or challenges to its claim that are contrary to the specific terms found in the confirmed plan or to its preclusive effect."  Id. at *6.  In particular, the court found that "[c]hallenges questioning the validity of HFC's underlying documents or the circumstances surrounding the execution of the note and mortgage, [and] whether the debt is secured by [Nix]'s residence, . . . are barred."  Id. at *7.

Similarly, in In re Kelley, debtors filed counterclaims against a creditor after the bankruptcy court confirmed the debtors' plan, which included a provision whereby the debtors specifically agreed to pay the creditor's claim.  Id. at 700–01.  The confirmed plan included a reservation of

rights provision, and referred to the possibility of claims against the creditor.  Id. at 704.  The

appeals court found that this was "little more than a general reservation of rights, which has been

held insufficient to prevent the application of res judicata."  Id. at 704–05.  The court reasoned that,

despite expressing the potential for claims against the creditor, the plan's language "does not

mention the grounds for these potential claims."  Id. at 704.  As a result, the court held that the

debtors' claims were barred as res judicata.  Id. at 705.

Debtor's confirmed Plan, in a section titled "PRESERVATION OF CLAIMS AND

AVOIDANCE ACTIONS," states:

> Notwithstanding anything to the contrary in the Plan or Disclosure Statement, the
> provisions of the Plan, Disclosure Statement, or Order Confirming Plan shall not
> have and are not intended to have any res judicata or collateral estoppel effect with
> respect to any causes of action that the Debtor may assert. . . . [A]ll such causes of
> action are expressly reserved and preserved for later adjudication and, therefore, no
> preclusion doctrine . . . shall apply so [sic] such causes of action upon or after
> confirmation of the Plan.

(DE 10-1, 106–07).  The section states also, "This shall include, but is not limited to all pre-petition

claims and any and all post-petition claims that [debtor] could or might assert . . . [under] any state

or federal statute, state or federal common law."  (DE 10-1, 107).  Debtor argues that the plain

language of this clause reserves its right to bring "any and all avoidance actions or any other cause

of action possessed by the Debtor," including the instant post-confirmation claim regarding

creditor's lien on the tractor proceeds.  (DE 20, 22).

However, the language in debtor's confirmed plan resembles the reservation of rights

provisions found to be overly broad in In re Nix and In re Kelley.  Although the reservation is

written in the plan, and therefore is "express," it is not "specific" with regard to causes of action.

See In re Nix, 112 F.3d at 261 ("The problem . . . was not that the reservation was not in writing,

12

but that the claim sought to be reserved was not identified. . . . The identification must not only be express, but also the claim must be specific.").  Instead of referring to specific causes of action, the provision is a blanket provision referring to "any state or federal statute." (DE 10-1, 107).  Although the Plan lists several statutes in the Bankruptcy Code as potential grounds for post-confirmation claims, they are described as non-exhaustive examples, "without limitation," on "any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules." (Id.).  Here, similar to the plan in In re Nix, the confirmed Plan explicitly states that creditor holds a certain lien, "with no mention of any need to question the validity of the loan transaction nor a specific reservation."  See In re Nix, 2012 WL 27667, at *7.  In seeking to reserve all causes of action on all grounds, the Plan fails to reserve claims on any specific bases, and so preserves none.  See id. at *6.

Debtor's reliance on In re EBG Health Care II, Inc., 303 B.R. 626 (Bankr. W.D. Mo. 2003), is unavailing, where that case involved a post-confirmation claim for personal injury and wrongful death, and therefore involved an issue that the bankruptcy court was without jurisdiction to resolve when confirming the bankruptcy plan.  Id. at 630 ("[N]o court heard the merits of the claim. . . . [T]his Court's Order confirming the Plan, . . . in no way specifically referred to his claim, and [ ] was entered by a Court that does not have jurisdiction to hear personal injury or wrongful death claims such as this one.").  Here, the bankruptcy court's Confirmation Order specifically addressed creditor's lien, and exercised proper jurisdiction to issue a final decision on the nature and extent of creditor's lien, pursuant to 11 U.S.C. § 1327(a).  See In re Peramco Int'l, Inc., 3 F. App'x 38, 42 (4th Cir. 2001) ("[T]he bankruptcy court [has] jurisdiction to confirm a Chapter 11 reorganization

13

plan that settles a creditor's rights as to property held by a non-debtor where the creditor has approved of and voted for the reorganization plan.").

Therefore, where the bankruptcy court's Confirmation Order renders res judicata creditor's lien on the tractor proceeds, and where the Plan fails to reserve specific grounds for debtor's post-confirmation claim, see Grausz, 321 F.3d at 472–73, the bankruptcy court's order must be affirmed.  See In re Nix, 2012 WL 27667, at *6–7.

2.    Equitable Estoppel

As an additional basis for affirming the bankruptcy court's order, creditor argues that debtor is equitably estopped from claiming that creditor does not hold a lien on the tractor proceeds. "Equitable estoppel is a well established concept invoked by courts to aid a party who, in good faith, has relied, to his detriment, upon the representations of another."  Humble Oil & Ref. Co. v. Fid. & Cas. Co. of N.Y., 402 F.2d 893, 897 (4th Cir. 1968).  The rule is "designed to protect any adversary who may be prejudiced by the attempted change of position."  Guinness PLC v. Ward, 955 F.2d 875, 899 (4th Cir. 1992).  The doctrine applies in the bankruptcy context when four criteria are met:

> 1) [T]he party estopped knew the relevant facts; 2) the party estopped intended for its conduct to be acted or relied upon, or the party acting had the right to believe the conduct was so intended; 3) the party acting was ignorant of the true facts; and 4) the party acting relied on the conduct to its injury.

Varat, 81 F.3d at 1317.  In other words, "[i]f the facts are such that debtor's failure to disclose a claim against a creditor or an objection to a creditor's claim misleads and damages the creditor, such creditor may invoke the theory of equitable estoppel."  In re Weidel, 208 B.R. at 853.

With regard to the first element, the party estopped must possess "actual or constructive knowledge of the true facts."  Service & Training, Inc. v. Data Gen. Corp., 963 F.2d 680, 690 (4th Cir. 1992).  "In estoppel, . . . knowledge of the facts basic to the exercise of the right may be

14

presumed when the facts are such as to put a reasonably prudent person upon inquiry [notice]." Mooney v. State Farm Mut. Auto. Ins. Co., No. 91-2561, 1992 WL 44809, at *2 (4th Cir. Mar. 10, 1992). Filing for bankruptcy requires a debtor to compile a schedule of assets and liabilities, 11 U.S.C. § 521(a)(1)(B), and a debtor may not solicit acceptance of a reorganization plan until he provides a court-approved, written disclosure statement containing adequate information for "a hypothetical reasonable investor . . . to make an informed judgment about the plan." Id. § 1125(a).

Under § 1125, "a debtor must disclose any litigation likely to arise in a non-bankruptcy contest. The result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions." Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3rd Cir. 1988). In addition, "adequate information should also include potential counterclaims against a secured lender which would extinguish that lender's entire claim." In re Kelley, 199 B.R. at 703. In total, the information required for bankruptcy filings under Chapter 11 would put a reasonably prudent party upon inquiry notice with regard to ownership of its assets and liabilities. See Mooney, 1992 WL 44809, at *2.

Debtor's conduct satisfies clearly three of the four criteria for application of equitable estoppel. In filing its Plan with the bankruptcy court, and attaching copies of the 2010 Security Agreement, the 2013 Security Agreement, and Schedule A, debtor intended for creditor to rely upon its representations in the Plan; and creditor justifiably trusted debtor's representations contained therein. See 11 U.S.C. § 1125(a); Varat, 81 F.3d at 1317. At the time creditor contemplated confirmation of debtor's Plan, creditor was unaware that Bell retained sole ownership of the tractor. Relying, in part, upon debtor's pattern of representations that it owned the

15

tractor and that creditor held a lien on the tractor, creditor withdrew its objection to the Plan and voted in favor of confirmation by the bankruptcy court. Creditor suffered injury in withdrawing its objection to the Plan and now having to defend its lien on the tractor or risk losing distribution of the tractor proceeds. See Varat, 81 F.3d at 1319 ("[Creditor] is unlikely to have voluntarily withdrawn its objection if uncertain of its [secured] status.").

Debtor alleges that it was unaware of Bell's title to the tractor when the bankruptcy court confirmed its Plan, and that it discovered Bell's ownership only after it retrieved the title from its files following the tractor's sale at auction. Consequently, debtor argues, the issue of ownership "only arose after the Confirmation Order," and errors in its security agreements with creditor should be construed against creditor because creditor's predecessors in interest drafted the agreements. (DE 20, 21). However, even accepting as true debtor's allegation that, in fact, it was unaware of facts concerning the tractor's title, debtor's knowledge of such information prior to confirmation may be imputed to it. See Mooney, 1992 WL 44809, at *2. In filing for bankruptcy pursuant to Chapter 11, debtor was required to provide adequate information regarding its assets and liabilities. See 11 U.S.C. § 1125. Such a requirement would have put a reasonably prudent party in debtor's position upon notice to inquire about the ownership of its assets and liabilities. See Mooney, 1992 WL 44809, at *2. Debtor possessed the documents containing the relevant information as early as 2003, when the tractor was purchased. These facts show that, prior to confirmation, debtor possessed constructive knowledge of the issues supporting the instant claim. See Service & Training, Inc., 963 F.2d at 690. Therefore, debtor's failure to raise its claim prior to confirmation, upon which creditor relied and by virtue of which creditor suffered damage, triggers application of

16

equitable estoppel.  See id.  As a result, debtor's post-confirmation attempt to pursue its claim regarding creditor's lien on the tractor is equitably estopped.

     3.    Waiver

     In addition, creditor argues that debtor waived its right to object to the Confirmation Order, where the parties negotiated and agreed to the terms of the Plan, and where the bankruptcy court confirmed and adopted it.  "Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all the parties, debtor and creditors alike."  Varat, 81 F.3d at 1317. Therefore, an interested party's "failure to object to a claim made on a debtor's assets prior to confirmation of the debtor's reorganization plan may operate as a waiver, barring the party from asserting the objection later."  Id.; see also In re Justice Oaks II, Ltd., 898 F.2d 1544, 1553 (11th Cir. 1990) ("[Plaintiffs], as parties in interest, had the right to object to that [proof of] claim, . . . . [but] waived their right to object by failing to object prior to confirmation of the plan.").

     The essential elements of waiver are: "(1) the existence, at the time of the alleged waiver, of a right, advantage or benefit; (2) the knowledge, actual or constructive, of the existence thereof; and (3) an intention to relinquish such right, advantage or benefit."  Fetner v. Rocky Mount Marble & Granite Works, 251 N.C. 296, 302 (N.C. 1959).  A party's intention to relinquish a right about which it has constructive knowledge may be demonstrated by its "representations and course of conduct indicating that it was not going to challenge or avoid . . . security instruments."  See, e.g., In re Tanglewood Farms, Inc., No. 10-6719-8-JRL, 2013 WL 1829910, at *12 n.13 (Bankr. E.D.N.C. May 1, 2013).  For example, in In re Canovali, No. 9-5342-8-RDD, 2011 WL 307374 (Bankr. E.D.N.C. Jan. 27, 2011), a creditor, with constructive knowledge that its claim on a deed was in conflict with a proposed bankruptcy plan, waived its post-confirmation right to contest title

17

to the deed when it withdrew its objection to the proposed plan and voted in favor of the bankruptcy court confirming it.  Id. at *6 ("The documents filed in this case are sufficient to have put [the creditor] on notice that . . . . its proposed treatment was in conflict with the [bankruptcy plan's] anti-modification provision.").  The court reasoned that, "by negotiating with the Debtors and entering into a Consent Order, as well as, withdrawing its Objection to Confirmation, [the creditor] affirmatively agreed to accept its treatment and modify its rights irrespective of the [conflicting] anti-modification provision." Id.

Here, debtor's conduct in the pre-confirmation proceedings before the bankruptcy court satisfies all three requirements for operation of waiver.  First, debtor's claim contesting creditor's lien on the tractor accrued with its execution of the 2010 Security Agreement, long before it initiated bankruptcy proceedings in 2014.  (See DE 11-2) (listing the tractor as debtor's personal property). Second, for the reasons explained in the previous section of the court's discussion, debtor possessed constructive knowledge of the facts underlying its claim.  See In re Canovali, 2011 WL 307347, at *6.  Lastly, debtor's pattern of representations that it owned the tractor and that creditor held a lien on the tractor, indicated that, under the terms of its Plan, debtor was not going to contest creditor's lien.  See In re Tanglewood Farms, Inc., 2013 WL 1829910, at *12 n.13.  Therefore, in agreeing to the terms of the Plan, debtor waived its post-confirmation right to contest the Plan's terms, and it is bound by the confirmed Plan's provision regarding creditor's lien on the tractor.  See Varat, 81 F.3d at 1317.

4.    Creditor's Lien

Debtor argues that creditor's lien on the tractor is invalid because Bell, the sole owner, did not sign the 2010 Security Agreement or the 2013 Security Agreement in his individual capacity.

18

As a result, debtor argues, no security interest in the tractor was created, and the bankruptcy court was without authority to assign Bell's property to creditor as collateral without Bell's consent. The bankruptcy court noted that the question of whether creditor holds a valid security interest in the tractor and the tractor proceeds is a close question under North Carolina law. However, challenges questioning the validity of underlying documents, circumstances surrounding execution of agreements, and whether a debt is secured, are barred in post-confirmation actions, where, as here, res judicata, equitable estoppel, and waiver, operate to bind debtor to the terms of the confirmed Plan, including the provision describing creditor's lien on the tractor. See Varat, 81 F.3d at 1320; In re Nix, 2012 WL 27667, at *7. Accordingly, debtor's arguments on these issues do not provide a basis for disturbing the finality of the Confirmation Order adopting the Plan. See id. at *6.

**CONCLUSION**

Based upon the foregoing, the court AFFIRMS the order of the bankruptcy court. (DE 1-1) Because the facts and legal arguments are adequately presented in the briefs and record, the court dispenses with the argument requirement under Federal Rule of Bankruptcy Procedure 8019(b), as argument would not aid significantly the decisional process. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 26th day of July, 2016.

LOUISE W. FLANAGAN
United States District Judge